IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CATHERINE FITCH, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Case Number: _____ |
| | * |
| UNUM LIFE INSURANCE | * |
| COMPANY OF AMERICA, | * |
| | * |
| Defendant | * |

## COMPLAINT

### Count I – Contract Reformation

1. Catherine Fitch, a resident and citizen of Alabama, is the widow of Robert Fitch who died on 6/10/09.

2. UNUM is a corporation doing business in Tennessee and deemed a citizen of Tennessee.

3. There is diversity of citizenship of the parties.

4. Robert Fitch worked for Adesta, LLC for 13 years when he was laid off on 4/24/09.

5. At the time Robert Fitch separated from Adesta, he was physically and mentally disabled and incompetent due to cancer, pain and fatigue and confusion due to treatment and medication . He had a short life expectancy.

6. Upon termination, Robert Fitch received eight weeks of severance pay beginning on 4/24/09 which included deductions of $318.50 for life insurance premiums. Robert Fitch had $350,000 of life insurance. Catherine Fitch was the beneficiary of the life insurance policy.

7. On 4/24/09, the day of termination, Robert Fitch sent an email to Adesta, LLC requesting continuance of life insurance and requesting appropriate forms. Robert Fitch listed his home address.

1

8. At the time of separation, Robert Fitch was entitled to convert his life insurance policy to an individual policy in an amount of $350,000.00 regardless of his health.

9. Robert Fitch died on 6/10/09 within the eight week severance period.

10. Catherine Fitch filed a claim for life insurance benefits which was denied by UNUM on 6/26/09 and again on 8/26/09 on the grounds that the life insurance coverage had terminated on 4/24/09, the last day Robert Fitch worked.

11. Plaintiff Catherine Fitch, widow of Robert Fitch, is the beneficiary on the life insurance policy and would be entitled to $350,000.00 in life insurance benefits if the policy had been converted or is deemed converted as a matter of law.

12. Adesta is the Plan Administrator of the policy.

13. Adesta enrolled its employees for insurance, collected the premiums, paid the premiums over to UNUM, and provided UNUM with a list of who the covered employees were and the amount of insurance they had.

14. The plan operated as a self-accounting plan which divided responsibility for its governance between Adesta and UNUM.

15. UNUM was the insurer of the plan, and Adesta acted in the capacity of plan administrator.

16. It was Adesta's responsibility to calculate, collect from employees and transmit premiums to UNUM.

17. Adesta was responsible for enrolling eligible employees, keeping a record of covered employees and ensuring that all of the proper forms were filed to effect and maintain coverage for its employees.

18. Premiums for all Adesta employees were transmitted and received in one lump sum each month.

19. UNUM had access to that information upon request pursuant to the policy.

20. UNUM requested information on payment of premiums by Fitch prior to denying the claim.

2

21. Adesta received an e-mail from Robert Fitch saying he wanted to continue his health insurance. Adesta received the email and e-mailed Mr. Fitch on 4/27/09, at Robert Fitch's work email regarding portability:

> " 'Bob, you will receive a COBRA letter regarding continuing your health coverage. This will come to your home address from Pay Flex/COBRA outsourcing.' Then the next paragraph says, 'I sent the life insurance **portability** application to you last week, you should receive it shortly. This portable coverage is subject to medical eligibility and evidence of insurability (good health).''

22. Portability is related to retirement, whereas conversion is related to terminations of employment.

23. Robert Fitch did not receive the return e-mail which was sent to his employment site.

24. Adesta did not tell UNUM that Fitch was terminated from employment prior to filing a claim.

25. Adesta is the agent of UNUM regarding life insurance policies for employees of Adesta.

26. Plaintiff is entitled to reformation of the insurance contract to effectuate a conversion pursuant to *CIGNA Corporation v. Amara*, 131 S.Ct. 1866, 1879 (2011), in which the U.S. Supreme Court authorized **reformation of the contract pursuant** to the "other appropriate equitable relief" clause in 29 U.S.C. §1132(a)(1)(B). The ERISA provision allows a participant or beneficiary of ERISA plan to obtain "other appropriate equitable relief" by authorizing a District Court to **reform** the terms of a plan or the contract and to enforce the terms of the reformed plan as a remedy:

> "The power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law, and was used to prevent fraud. See *Baltzer v. Raleigh & August R.Co.*, 116 U.S. 634, 645, 6 S.Ct. 216, 29 L.Ed. 505 (1885) ) '[I]t is well settled that equity **would reform the contract and enforce it, as reformed**, if the mistake or fraud were shown'); *Hearne v. Marine Ins. Co.*, 20 Wall. 488, 490, 22 L.Ed. 395 (1874) ('The reformation of written contracts for fraud or mistake is an ordinary head of equity jurisdiction.')

3

27. Plaintiff settled a claim against Adesta on a pro tanto basis reserving all claims against UNUM.

28. Plaintiff filed a prior claim against UNUM in *Fitch v. UNUM*, cv-11-PT-4246-VEH in the Northern District of Alabama. UNUM was granted summary judgment on the contract claim. Equitable claims were dismissed without prejudice for failure to state a claim. A subsequent Motion to Amend the Complaint to state a claim was denied.

WHEREFORE, Plaintiff requests a reformation of the contract so as to allow recovery of life insurance benefits by Catherine Fitch, the widow.

## Count II – Equitable Estoppel

1. Plaintiff realleges all prior allegations.

2. Plaintiff is entitled to benefits under Equitable Estoppel as recognized in *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir. 1990), *Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1878 (2011), *Branch v. G. Bernd Company*, 955 F.2d 1574 (11th Cir. 1992).

3. UNUM, through its agent, Adesta, after notice of intent to convert, misrepresented to Robert Fitch the need to file a request for conversion within the 8 weeks termination period by failing to communicate with Robert Fitch prior to his death and by failing to send a conversion application. Robert Fitch had every reason to believe that a conversion request did not have to be filed until 8 weeks after termination because Robert Fitch knew the premiums had been paid from his 8 week severance package.

4. Robert Fitch, to his detriment, relied on UNUM Life's silence and lack of a response.

5. Plaintiff has suffered a loss of benefits by the failure to communicate and the failure to provide an application to convert after due notice.

6. Adesta is the agent of UNUM Life and Adesta's failure is attributable to UNUM.

WHEREFORE, Plaintiff requests payment of $350,000.00, plus interest and attorney fees.

4

## Count III – Ambiguity

1. Plaintiff realleges all prior allegations.
2. The life insurance policy is ambiguous.
3. All ambiguities should be construed in favor of Plaintiff.
4. There are ambiguities in the Policy and the circumstances surrounding termination of the policy and termination of employment as follows:
   - when did Robert Fitch last work for Adesta, the date of termination or the end of the severance pay period;
   - when did a conversion application have to be filed, 30 days after last day worked or 30 days after severance pay period;
   - whether failure to provide an application for conversion stayed or tolled the time limit;
   - whether the "actively at work" requirement of the policy refers to the last day worked or the end of the severance pay period.
5. "Actively at work" includes the eight week severance package in which premiums were deducted. In *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555 (1990):

> "The eligibility requirements for Career Division employees state that to be eligible for insurance, an employee must be working 32 hours a week at his regular job and customary place of employment. According to United, coverage for Del Guidice terminated when he was no longer 'actively employed.' We find that the requirement of 'active employment' as used for purposes of termination of coverage is ambiguous. It does not distinguish between those parties who fail to meet the 'active work' requirement because they are on vacation and those parties who fail to meet the requirement because they are working only part-time or have permanently left work. As with disability, United appears to argue that the 'active work' requirement disqualifies an employee as soon as he does not show up at his place of business. Sun Life argues, on the other hand, that the 'active employment' requirement is superseded when an employee is on short-term disability, and that this is defined by Sun Life to begin five days after an employee is out sick and to extend for six months. It is undisputed that Sun Life has an internal policy of continuing existing coverage for employees who are on short-term disability.

5

As noted above, where provisions of an insurance contract are ambiguous or subject to doubt, the interpretation most favorable to coverage of the insured will prevail. We agree with Sun Life that the 'active work' requirement cannot be construed to terminate coverage for employees who are out on short-term sick leave. As the court stated in *Morris v. Mutual Benefit Life Insurance Company,* 258 F.Supp. 186, 190 (N.D.Ga. 1966), 'it would be unreasonable to assume that the parties intended a contract whereby any regular employee would be excluded during any week in which he did not work 30 hours because of illness, vacation, etc.'"

WHEREFORE, Plaintiff claims damages and equitable relief of $350,000.00, plus interest, and attorney fees.

### Count IV – Request for Conversion

1. Plaintiff realleges all prior allegations.

2. Under the circumstances of this claim, Catherine Fitch has an equitable right to request conversion of the group policy of Robert Fitch into an individual policy.

3. Catherine Fitch requests a conversion of Robert Fitch's policy to an individual policy. Catherine Fitch requests payment of the life insurance claim in full with interest.

WHEREFORE, Plaintiff claims damages and equitable relief of $350,000.00, plus interest, and attorney fees.

### Count V – Joint Fiduciary Liability

1. Plaintiff realleges all prior allegations.

2. UNUM is liable for the conduct of Adesta under the co-fiduciary provision of ERISA 29 U.S.C. §1105(a).

> "In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which

6

give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

3. UNUM and Adesta were co-fiduciaries regarding the life insurance of Robert Fitch.

4. Adesta knew of Robert Fitch's incapacitated condition, knew of his payment of premium and knew of his request for conversion. Adesta breached its fiduciary duties to Robert Fitch. UNUM is responsible as a co-fiduciary.

5. During the claim process, the breach of fiduciary duty became known to UNUM and UNUM failed to remedy the problem.

WHEREFORE, Plaintiff requests that UNUM Life be held responsible for the breach of fiduciary duty and failure to act of Adesta.

s/MYRON K. ALLENSTEIN
AL Bar Number: 2058-A61-M
Attorney for Plaintiff
ALLENSTEIN & ALLENSTEIN, LLC
141 South 9th Street
Gadsden, AL 35901
Telephone: (256) 546-6314
Fax: (256) 547-7648
myron@allenstein.com
